# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **GLAY H. COLLIER, II AND** | **CIVIL ACTION NO. 15-01484 (lead)** |
| **MCBRIDE AND COLLIER, LLC,** | **--consolidated with–** |
| **Appellants** | **CIVIL ACTION NO. 15-01853 (member)** |
| | |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| | |
| **ANGELA DENISE WASHINGTON** | **MAG. JUDGE KAREN L. HAYES** |
| **Appellee** | |

## MEMORANDUM OPINION

Pending before the Court is the consolidated Appeal of Glay H. Collier, II and McBride and Collier, LLC (collectively "the Collier Appellants")[1] from the April 7 and May 28, 2015 Memorandum Opinions of Bankruptcy Judge Jeffrey Norman (hereinafter "the Bankruptcy Court") in *In re Washington,* Bankruptcy Case No. 10-30666 and Adversary Proceeding No. 14-03017.  In the April 7, 2015 Memorandum Opinion, the Bankruptcy Court awarded damages to Appellee Angela Washington ("Washington") and attorneys' fees to the Chapter 13 Trustee, as well as imposing a sanction against the Collier Appellants.  In the May 28, 2015 Memorandum Opinion, the Bankruptcy Court also awarded Washington attorneys' fees and costs.

For the following reasons, the Bankruptcy Court's Opinions are AFFIRMED IN PART AND REVERSED IN PART, and Collier's Appeal is GRANTED IN PART AND DENIED IN PART.  This matter is REMANDED to the Bankruptcy Court to the extent that further

---

[1]Although Collier and Thomas C. McBride were both members of McBride and Collier, LLC, the facts are undisputed that Collier ran the Monroe and Shreveport offices, while McBride ran the Alexandria office.  As the facts giving rise to this appeal arose out of the operation of the Shreveport office, the Court finds it appropriate to refer to the actions of Collier and the entity of McBride and Collier, LLC, collectively as "the Collier Appellants."

proceedings are necessary.

## I.   FACTS

Washington filed a Chapter 13 case in the Bankruptcy Court for the Western District of Louisiana in 2010.  The plan was confirmed on July 28, 2010.

Because of increased post-confirmation expenses, on June 13, 2011, Washington converted her Chapter 13 case to a Chapter 7 case.  Washington's attorneys' fees to the Collier Appellants were paid via debit charges on her account through August 2011.

However, the discharge of Washington's Chapter 7 was cancelled for failure to file the required financial management course certification pursuant to 11 U.S.C. §§ 727(a)(11) and 1328(g)(1).  Her case was closed on February 28, 2012.

From the time of her initial filing until October 7, 2014, Washington was represented by the Collier Appellants.  On October 6, 2014, Washington moved through her new attorney, Sam O. Henry, IV, to reopen her Chapter 7 case and to obtain a discharge.[2]

On October 22, 2014, Washington filed a Motion to Show Cause Why Attorneys' Fees Should Not Be Disallowed, to Compel Glay H. Collier, II, to Disgorge Attorneys' Fees and for Sanctions.  In her motion, which was deemed an adversary complaint, Washington alleged that (1) the Collier Appellants violated 11 U.S.C. §§ 527 and 528 by failing to provide certain disclosures and a written contract detailing the services to be provided and thus are liable for attorneys' fees and costs pursuant to 11 U.S.C. § 526(c)(2); (2) the Collier Appellants collected fees post-petition in violation of the automatic stay under 11 U.S.C. § 362 by debiting her bank

---

[2]Until the motion was granted, the Collier Appellants apparently remained counsel of record.

2

account; and (3) the Collier Appellants refused to file her required financial management course certification because of her non-payment of legal fees, causing her case to be closed without a discharge.  As a result, Washington claimed that she lost her automobile and had her wages garnished.

On February 20, 2015, the Collier Appellants filed a motion for summary judgment, which the Bankruptcy Court granted in part and denied in part.  The Bankruptcy Court granted the motion to the extent that Washington claimed the Collier Appellants had refused to file her financial management course certification, but denied the motion on her claims under 11 U.S.C. §§ 362, 527, and 528.

On April 2, 2015, the Bankruptcy Court held a trial on the adversary proceeding.

In the April 7, 2015 Memorandum Opinion, the Bankruptcy Court ruled that the Collier Appellants violated 11 U.S.C. §§ 526(a)(1) and (a)(3)(A) by misrepresenting to Washington, as an "assisted person," that they would take all actions to ensure she received a discharge in her Chapter 7 case.  The Bankruptcy Court also found that the Collier Appellants violated these sections by failing to investigate and take remedial action to see that Washington was discharged.

The Bankruptcy Court also ruled that the Collier Appellants violated 11 U.S.C. §§ 527 and 528 by failing to make the required disclosures and failed to provide her with a contract.  The document that was given to Washington did not clearly and conspicuously detail the services that the Collier Appellants would provide her and the fees for those services.

Finally, the Bankruptcy Court found that the Collier Appellants violated 11 U.S.C. § 362 by debiting post-petition payments from Washington's bank account.

Based on these findings, the Bankruptcy Court ordered the following:

- The Collier Appellants were ordered to pay damages and returned attorneys' fees of $2,377.04 for a violation of 11 U.S.C. § 526(c)(2)(A);

- Collier was ordered to pay Washington insufficient fund fees in the amount of $102 and to refund her attorneys' fees of $600, for a total of $702.00, for a violation of 11 U.S.C. §362(k) as an additional basis of recovery;[3]

- Collier was ordered to pay Washington punitive damages of ten times actual damages, which is equal to $7,020.00.

- Collier was ordered to pay a civil penalty of $20,000.00, pursuant to 11 U.S.C. § 526(c)(5)(B).

- A hearing was set on Washington's request for attorneys' fees and costs.

- Finally, Collier was referred for disciplinary proceedings.

On May 21, 2015, a hearing was held on Washington's request for attorneys' fees and costs. Washington's contingency fee agreement with her attorneys was filed in the record and showed that she would be entitled to 50% of all money or property collected as a result of settlement or trial. The Collier Appellants challenged her right to recover more than 50% of actual costs, including returned attorneys' fees.

On May 28, 2015, Judge Norman issued a second Memorandum Opinion relying on *In re Repine*, 536 F.3d 512 (5th Cir. 2008), to award attorneys' fees that were incurred in prosecuting the 11 U.S.C. § 362 claim. Judge Norman determined that Washington should be awarded attorneys' fees of $19,817.93 and costs of $199.41 for a total of $20,017.34.

This appeal followed. The Collier Appellants raised four issues on appeal: (1) whether the Bankruptcy Court committed an error of law or an abuse of discretion in imposing a civil

---

[3]These damages were duplicative; it was the intent of the Bankruptcy Court, however, that Washington recover the total amount of $2,377.04 in actual damages, including returned attorneys' fees, plus punitive damages of $7,020.00.

penalty of $20,000; (2) whether the Bankruptcy Court committed an error of law in finding that Washington's claims under §§ 526(c)(2)(A), 527, and 528 of the Bankruptcy Code had not prescribed; (3) whether the Bankruptcy Court committed an error of law in finding that Washington's claims under 11 U.S.C. § 362 were timely filed and not otherwise barred by the doctrine of laches; and (4) whether the Bankruptcy Court committed an error of law by awarding Washington attorneys' fees in the amount of $19,817.93.

All briefing is complete, and the Court now issues this Opinion.

## II.   APPEAL

### A.   Standard of Review

This Court has jurisdiction over the Collier Appellants' appeal from the Bankruptcy Court's Opinions pursuant to 28 U.S.C. § 158(a).  In this regard, a district court functions as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law *de novo*.  *In re Eldercare Properties, Ltd.*, 568 F.3d 506, 515 (5th Cir. 2009).  Mixed questions of fact and law are reviewed *de novo*.  *In re Canion*, 196 F.3d 579, 584 (5th Cir.1999).  A decision to impose sanctions is reviewed for "an abuse of discretion."  *In re Smyth*, 242 B.R. 352, 357 (W.D.Tex.1999) (citing *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir.1999)).  A court "by definition abuses its discretion when it makes an error of law."  *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (citations omitted); *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) ("An abuse of discretion occurs where the bankruptcy court '(1) applies an improper legal standard or follows improper procedures . . ., or (2) rests its decision on findings of fact that are clearly erroneous.'") (citation omitted).

**B.      Did the Bankruptcy Court commit an error of law or abuse of discretion in imposing a civil penalty of $20,000?**

The Collier Appellants argue that the Bankruptcy Court improperly imposed a civil penalty without a motion having been brought by the U.S. Trustee, the debtor, or the Bankruptcy Court itself.  Thus, they contend that they were denied due process because they had no notice via the Complaint, via motion, or via the pretrial memorandum that civil penalties were at issue.

Washington states that she did not request imposition of a penalty and thus declines to respond to this argument in her brief.

The Court must still consider, on the record, whether the Bankruptcy Court's imposition of a penalty was an error of law or abuse of discretion.[4]  The Bankruptcy Court relied on 11 U.S.C. § 526(c)(5) to impose a civil penalty of $20,000.  That statute provides:

> Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, **on its own motion** or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—
>
> (A)   enjoin the violation of such section; or
>
> (B)   impose an appropriate civil penalty against such person.

11 U.S.C. § 526(c)(5) (emphasis added).

In this case, it is undisputed that no motion was filed by the U.S. Trustee or Washington. The Bankruptcy Court could, however, impose a sanction on its own motion if it found that the

_____

[4]Contrary to the Collier Appellants' contention in their reply memorandum [Doc. No. 13, p. ii], Washington's failure to respond does not constitute a waiver.  The Collier Appellants had the duty to raise the issues it wished for the Court to review on appeal.  While Washington had an opportunity to respond to the Collier Appellants' brief, the Court's duty is to consider, *de novo*, errors of law, if properly preserved, without regard to whether Washington chose to respond to a particular issue.

Collier Appellants violated § 526(c)(6) or engaged in a clear and consistent pattern or practice of violating this section.

In *In re Sustaita*, 438 B.R. 198 (B.A.P. 9th Cir. 2010), *aff'd,* 460 Fed. App'x 627 (9th Cir. 2011), the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit Court of Appeals addressed this issue. In that case, the bankruptcy court relied on § 526(c)(5)(B) to impose a $100,000 civil penalty against the appellant, who was found to have operated as a bankruptcy petition preparer and debt relief agency. The Chapter 13 Trustee had filed an application in the bankruptcy court seeking various types of relief against the appellant, including punitive sanctions, but, on appeal, the BAP found that "a plain reading of [the] application shows that it was insufficient to alert [the appellant] that the court was acting on its own motion or that a civil penalty under [§ 526(c)(5)(B)] this section was even under consideration."[5] *Id.* at 212. Moreover, the BAP found that the U.S. Trustee's joinder in the Chapter 13 Trustee's application did not provide the necessary "explicit notice that the U.S. Trustee was moving under § 526(c)(5)(B)." *Id.* Finally, the BAP found that the pre-trial statement also failed to make any reference to § 526(c)(5)(B) in the contested issues. *Id.*

Based on these facts, the BAP reversed the imposition of a sanction against appellant, explaining its decision as follows:

> The Ninth Circuit has held that prior to sanctioning a party, the court must provide the party to be sanctioned with particularized notice to comport with due process. *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 548 (9th Cir. 2004). Such notice necessarily includes a description of the alleged misconduct as well as the source of the court's sanctioning power so that the party would know which factors to address to avoid sanctions.
>
> This rule is equally applicable to the court's statutory power to act on its own motion when imposing a civil penalty under § 526(c)(5)(B) or to a motion initiated

---

[5]The Chapter 13 Trustee did not have the right to move for sanctions under § 526(c)(5).

by the U.S. Trustee. Although we believe [the Chapter 13 Trustees'] applications most likely informed [appellant] of the conduct alleged to be sanctionable under § 526(c)(5)(B), we conclude that [the appellant] did not receive explicit notice that the court was acting on its own motion or considering a civil penalty under § 526(c)(5)(B) nor was there any indication that the U.S. Trustee was moving under this section.[6] Accordingly, we reverse the court's decision to impose a civil penalty against [the appellant] under this section. . . .

*Id.* at 212.

The Fifth Circuit Court of Appeals has not addressed this issue. However, at least with charges of violations of disciplinary rules, district courts in the Western District of Texas have found that "the Bankruptcy Court must give Appellant particularized notice of: (a) the improper conduct; (b) the disciplinary rules he is charged with having violated; and (c) the potential sanctions he faces." *In re Alvarado*, No. CIV.SA-03-CA-0295-RF, 2003 WL 22097092, at *6 (W.D. Tex. July 29, 2003); *see also In re Luna*, Nos. 03–50956, 02–54849, Civ.A.SA–03–CA–0472X, Civ.A.03–CA–0481–XR, 2004 WL 1618824 (W.D. Tex. July 19, 2004) (same).[7]

The Bankruptcy Court was faced with a number of greatly concerning allegations against the Collier Appellants which he ultimately found to be true.[8] Nonetheless, this Court agrees that Due Process requires more than just notice of the conduct at issue, but also the particular standard by which his conduct will be assessed and an opportunity to be heard as to that standard. *See Alvarado*,

---

[6]Since this decision issued, § 526(c)(5)(B) has been amended to allow a debtor to also bring a motion for penalties.

[7]Although the Western District of Texas cases are not directly on point and involve, to some extent, application of local rules, the Court finds that they are worthy of note given the related disciplinary issues in this case.

[8]Since the issuance of the Bankruptcy Court's opinions, Collier admitted in the related disciplinary matters that he took certain improper and unprofessional actions, including with regard to the Washington matter. He then consented to disbarment. The Judges of the Western District of Louisiana disbarred Collier on September 28, 2015.

2003 WL at *5 (citing *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997), *cert. denied*, 522

U.S. 932 (1997); *Satcorp Intern. Group v. China Nat. Silk Import & Export Corp.*, 101 F.3d 3, 6 (2d

Cir. 1996)).

The Court has carefully reviewed the record, but there is no evidence that the U.S. Trustee

or the debtor sought such a remedy under § 526(c)(5)(B).  In her Complaint, Washington sought

damages and attorneys' fees under § 526(c)(2), but not a civil sanction under § 526(c)(5)(B).

Likewise, Washington filed a pre-trial memorandum [Doc. No. 4-1, Appx. 000030-36], but this

section was never cited as a source of relief against the Collier Appellants.  Finally, on the record

before it, the Court finds no evidence that the Bankruptcy Court gave notice of its intent to impose

a sanction under § 526(c)(5)(B) prior to the hearing on April 2, 2015.

Under these facts, the Court is compelled to reverse that portion of the Bankruptcy Court's

April 7, 2015 Memorandum Opinion ordering Collier to pay a civil penalty of $20,000.00, pursuant

to 11 U.S.C. § 526(c)(5)(B).  To this extent, the Bankruptcy Court's April 7, 2015 Opinion is

REVERSED, and the Collier Appellants' appeal is GRANTED.

> **C.   Did the Bankruptcy Court commit an error of law in finding that Washington's claims under § 526(a)(2)(A) for violations of §§ 527 and 528 of the Bankruptcy Code had not prescribed?**

The Collier Appellants next contend that the Bankruptcy Court erred in finding that

Washington's claims under § 526(a)(2)(A) were not prescribed.  Washington based these claims on

the Collier Appellants' failure to provide certain disclosures and a written contract describing the

bankruptcy services to be performed in violation of 11 U.S.C. §§ 527 and 528.  Citing the four-year

statute of limitations contained in 28 U.S.C. § 1658(a), the Collier Appellants argued that

Washington had not timely brought her claims within four years of the date the violations occurred.

Washington did not respond to this argument on the basis that such a claim would belong to the bankruptcy estate because it "would have necessarily arisen prior to the plaintiff's filing of a bankruptcy petition." [Doc. No. 12, p. 3].

In finding that there was a genuine issue of material fact whether Washington's claims had prescribed, the Bankruptcy Court relied on the private action articulated in 11 U.S.C. § 526(c)(2)(A) and the applicable catchall limitations period found in 28 U.S.C. § 1658(a).

Section 526(c)(2)(A) provides:

Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have–

(A)    intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person[.]

The applicable statute of limitations is found in 28 U.S.C. § 1658(a), which provides that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years **after the cause of action accrues.**"[9] (emphasis added).

The disclosures under Section 527 must be provided "not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person." 11 U.S.C. § 527(a)(2). The required disclosures under Section 528 must be provided "not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition

---

[9]Section 526(c)(2)(A) was enacted after the December 1, 1990 effective date of 28 U.S.C. § 1658(a) and its general catchall limitations period.

under this title being filed." 11 U.S.C. § 528(a)(1). Thus, it is undisputed that the disclosures should have been made near the time of the Collier Appellants' initial representation of Washington.

However, in the Bankruptcy Court's order on Collier's Motion for Summary Judgment on this issue, the Bankruptcy Court accepted Washington's argument that "the statute of limitations period would not necessarily have begun at the outset of representation," but may begin to run only after "'the plaintiff . . . discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation. . . . '" [Doc. No. 4-1, Appx. 000024 (quoting *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010))]. The Bankruptcy Court then found a genuine issue of material fact for trial as to when the statute of limitations began to run. The Bankruptcy Court concluded that the Collier Appellants were "free to argue at trial that the plaintiff's claims are barred by the statute of limitations, this is [a] fact determination that must be made by the trier of fact at trial." [Doc. No. 4-1, Appx. 000025].

In the April 7, 2015 Memorandum Opinion, the Bankruptcy Court found that the statute of limitations provides an affirmative defense, that the Collier Appellants made no argument and presented no evidence on this affirmative defense at trial, and, "[t]herefore, any affirmative defense that the . . . statute of limitations [under 28 U.S.C. § 1658(a)] has time-barred the claim under 11 U.S.C. § 526(c)(2)(A) is overrruled."[10] [Doc. No. 4-1, Appx. 000199].

On appeal, the Collier Appellants argue that the Bankruptcy Court committed an error of law when it concluded that the four-year statute of limitations period under 28 U.S.C. § 1658(a) begins to run from the date of discovery of the violation rather than from the date of the occurrence.

---

[10]The Memorandum Opinion refers to the "Louisiana statute of limitations," but the statute of limitations at issue is that found in § 1658(a). [Doc. No. 4-1, Appx. 000199].

Before the Court can consider the Collier Appellants' arguments, it must first determine whether they properly preserved this point of error.  As the Bankruptcy Court points out, a party asserting an affirmative defense must properly raise that defense, preserve that defense, and provide supporting evidence.  The Collier Appellants did so initially in this case by asserting the defense in their answer and then raising the legal argument in a motion for summary judgment prior to trial, along with the facts supporting their legal argument.  The Bankruptcy Court, however, ruled against the Collier Appellants on their legal premise, finding a genuine issue of material fact as to when the four-year statutory period began.  At trial, the Collier Appellants could have made a motion for judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, which was made applicable to adversary proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure.   They did not do so and failed to preserve this issue for appeal.  *See MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1271 (Fed. Cir. 2013) ("Because it is improper to appeal a denial of summary judgment, . . . we conclude that Rexam and Valois waived the issue of indefiniteness by failing to raise it at the bench trial.").  Thus, the Court does not have jurisdiction to entertain their arguments.  To this extent, the Bankruptcy Court's April 7, 2015 Opinion is AFFIRMED, and the Collier Appellants' appeal is DENIED.

**D.      Did the Bankruptcy Court commit an error of law in finding that Washington's claims under 11 U.S.C. § 362 were timely filed and not otherwise barred by the doctrine of laches?**

The Bankruptcy Court also ruled in favor of Washington on her claims that the Collier Appellants violated the automatic stay provision of 11 U.S.C. § 362 by debiting her bank account after the conversion of her Chapter 13 bankruptcy to a Chapter 7 bankruptcy.  The Collier Appellants urge the Court to find that the Bankruptcy Court committed an error of law by finding that these

claims were timely filed and not barred by the doctrine of laches.

Congress has yet to establish any limitation periods governing actions brought for violations of the automatic stay.  *See In re Bernheim Litig.*, 290 B.R. 249, 258 (D.N.J. 2003).  In most cases, when Congress is silent, the catchall federal four-year statute of limitations codified at 28 U.S.C. § 1658(a), discussed *supra*, applies.  However, § 1658(a) applies only to those acts enacted after 1990.  Title 11, United States Code, Section 362 was enacted in 1978, so § 1658(a) does not supply the limitations period for this violation.

Federal courts have not consistently applied any limitations period to actions for violations of the § 362 automatic stay.  Some courts have borrowed analogous state limitations periods, some have applied no limitation periods, some have applied the doctrine of laches, and some have applied a hybrid of these.  *See generally, In re Bernheim Litig.*, 290 B.R. at 258 (citing Patrick McDowell, *Limitation Periods for Federal Causes of Action after the Judicial Improvement Act of 1990*, 44 VAND. L. REV. 1355 (1991)).

Citing *Holmberg v. Armbrecht*, 327 U.S. 392 (1946), the Collier Appellants contend that the Bankruptcy Court should have first considered the analogous state limitations period, which would be Louisiana's one-year prescriptive period for conversion,[11] while performing an equitable balancing test.  *See id.* at 395 ("[W]hen Congress is silent . . . [it] has usually left the limitations of time for commencing actions . . . to judicial implications.  As to actions of law, the silence . . . has been interpreted to mean . . . to adopt the local law of limitation."   However, the statute of

---

[11]As Collier has since admitted, the Collier Appellants wrongfully debited funds from Washington's bank account.  They contend that this action is analogous to the delictual action of conversion under Louisiana law, which is subject to the one-year prescriptive period under Louisiana Civil code article 3492.  *See In re Succession of Landrum*, 958 So.2d 778, 780 (La. App. 1st Cir. 3/26/08).

13

limitations periods "are not controlling measures," but are to be considered against equitable measures.).  As the analogous state limitations period had run when Washington filed her adversary complaint, the Collier Appellants argue that there should be a presumption of laches, and Washington had to show that her delay was excusable and the Collier Appellants were not prejudiced thereby. [Doc. No. 11, p. 18 (citing *Watz v. Zapata Off-Shore Oil Co.,* 431 F.2d 100 (5th Cir. 1970); *Muller v. Lykes Bros. Steamship Co.*, 337 F.Supp. 700, 702 (E.D. La. 1972); *Nealy v. Fluor Drilling Servs.*, Inc., 524 F. Supp. 789, 794 (W.D. La. 1981); *Stretton v. Penrod Drilling Co.*, 701 F.2d 441 (5th Cir. 1983))].[12]

In ruling on the Collier Appellants' motion for summary judgment, the Bankruptcy Court considered the same arguments presented in this appeal. The Bankruptcy Court found (as the Collier Appellants admit) that not all courts have looked to state limitations periods where Congress is silent.  Instead, the Bankruptcy Court agreed with the reasoning of the bankruptcy courts in *Newcomer v. Litton Loan Serving, L.P.*, 416 B.R. 166 (Bankr. D. Md. 2009), and *Rushing v. Green Tree Servicing, LLC (In re Rushing)*, 443 B.R. 85, 98 (Bankr. E.D. Tex. 2010).  In *Newcomer*, the bankruptcy court refused to apply a state limitations period to a § 362 violation, finding "that a claim of a violation of the automatic stay does not depend on state statutory or case law." [Doc. No. 4-1, Appx. 000026].  In *Rushing*, the bankruptcy court noted that "courts have permitted debtors to bring . . . actions [under § 362(k)] well after the underlying bankruptcy case has been closed or dismissed" and that the approach of looking to state limitations periods is "not mandated." 443 B.R. at 98 (citing in [Doc. No. 4-1, Appx. 000027].  The Bankruptcy Court in this case found that, likewise, "[t]he alleged violations of § 362 do not implicate Louisiana law in any way[,]" and found that it was "not

---

[12]All of the Collier Appellants' cited cases arise in admiralty, not in bankruptcy.

appropriate to graft Louisiana's prescription period concerning the tort of conversion to the alleged violations of the 11 U.S.C. § 362 automatic stay." [Doc. 4-1, Appx. 000027].

In its Conclusions of Law following trial, the Bankruptcy Court found that the Collier Appellants failed to raised the affirmative defense of laches as to their violation of the automatic stay.  The Bankruptcy Court considered the evidence and awarded damages.

As the defense of laches is part and parcel of the Collier Appellants' arguments regarding the timeliness of Washington's claims, it would appear that the Collier Appellants have also failed to preserve this issue for appeal.  Nevertheless, even if this issue has been properly preserved for appeal, the Court agrees with Washington that the Bankruptcy Court did not commit an error of law in finding that her claim was timely filed.  The Bankruptcy Court properly concluded that Washington's rights arose in bankruptcy law, and state law is not implicated.

Further, as Washington points out, even if Louisiana's one-year limitations period were to be considered as analogous to the facts in Washington's federal claim, that limitations period would not be applied automatically.  Rather, it would be viewed in the context of the equities.  In this case, as the Bankruptcy Court recognized, the equities clearly favored Washington, who was deprived of knowledge of her rights by the Collier Appellants' failure to provide her the required disclosures, and whose case was abandoned by the Collier Appellants after a debit failed to clear her bank account.  As soon as Washington retained new counsel, she proceeded with filing a motion in the Bankruptcy Court.  Under these circumstances, the Bankruptcy Court committed no error of law in finding that it could proceed to review the substantive merits of Washington's § 362 claim.  Therefore, to this extent, the Bankruptcy Court's April 7, 2015 Opinion is AFFIRMED, and the Collier Appellants' Appeal is DENIED.

**E.     Did the Bankruptcy Court commit an error of law by awarding Washington attorneys' fees in the amount of $19,817.93?**

Finally, the Collier Appellants argue that the Bankruptcy Court committed an error of law in awarding Washington attorneys' fees pursuant to 11 U.S.C. § 362(k), in the amount of $19,817.93 as damages for their violation of the automatic stay.

Title 11, United States Code, Section 362(k)(1) provides in part ". . . an individual injured by willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages."

The Collier Appellants argue that the statutory language requires an award of attorneys' fees to be considered an item of damage for the injured individual, so if she has no liability for attorneys' fees, then attorneys' fees are not recoverable.  Because Washington had a contingency fee contract with her attorney for 50% of all amounts collected in the action for violation of the automatic stay and for all costs incurred, the Collier Appellants argue that she could recover only 50% of the amounts properly awarded as actual damages.

In its April 7, 2015 Memorandum Opinion, the Bankruptcy Court found that Washington suffered actual damages of $600[13], plus $102 for three insufficient funds fees of $34 each.  The Bankruptcy Court also ordered the return of the $1,675.04  attorneys' fees paid by the Chapter 13 Trustee to the Collier Appellants prior to the conversion.   Thus, the Bankruptcy Court awarded damages and returned attorneys' fees to Washington in the total amount of $2,377.04.   The Bankruptcy Court also awarded Washington punitive damages for violations of the automatic stay at a rate of ten times her actual damages, or $7,020.  Finally, the Bankruptcy Court  found that an

---

[13]The Collier Appellants admitted to this amount.

16

award of attorneys' fees and costs was mandated and set a separate hearing to determine the appropriate amount to be awarded.

A hearing was held on May 21, 2015, during which Washington requested an award of attorneys' fees and costs in the total amount of $24,207.34.  The Collier Appellants did not object to the requested rates or the time expended, but objected to an award of attorneys' fees greater than 50% of her actual damages.[14]

In its May 28, 2015 Memorandum Opinion, the Bankruptcy Court rejected the arguments of the Collier Appellants.  The Bankruptcy Court relied on the Fifth Circuit's decision in *In re Repine*, 536 F.3d 512 (5th Cir. 2008).  In *Repine*, the Bankruptcy Court found that the Fifth Circuit "clearly held it is proper to award attorney's fees that were incurred in prosecuting an 11 U.S.C. § 362 claim as long as there are also actual damages." Civil Action No. 15-01853 [Doc. No. 1, p. 3].[15]  The Bankruptcy Court found further that Washington's "fee agreement with her attorney does not limit the recovery as it clearly states the attorney will be entitled to '50% of all money or property collected as a result of settlement or trial.'" *Id.* (quoting Exh. D-1).  The Bankruptcy Court then conducted a review of the billing statement and time records submitted by Washington's counsel. After deducting time improperly charged for clerical and duplicative tasks, the Bankruptcy Court awarded attorneys' fees of $19,817.93 and costs of $199.41, for a total of $20,017.34.

As they did at the May 21, 2015 hearing, the Collier Appellants rely on *In re Thompson*, 426 B.R. 759 (Bkrtcy. N.D. Ill. 2010), to support their argument that the Bankruptcy Court erred by

---

[14]The Collier Appellants did not object to the inclusion of the returned attorneys' fees as part of Washington's actual damages.

[15]The Collier Appellants' two appeals were consolidated for the Court's consideration, but the Bankruptcy Court's May 28, 2015 Opinion was filed in the member case.

awarding damages greater than what Washington was actually responsible or liable for under her fee-shifting agreement.   In *Thompson*, the bankruptcy court for the Northern District of Illinois considered a request for attorneys' fees against a secured creditor which had willfully violated the automatic stay by repossessing the debtor's vehicle pre-petition and refusing to return the vehicle to the bankruptcy estate.   The bankruptcy court denied attorneys' fees because it found the fee-shifting provision of § 362(K)(a) was meant only "to restore this Debtor to the actual financial position that he would have occupied had the Defendant not violated the automatic stay." *Id.* at 766.  Under the facts of that particular case, the debtor's attorneys had waived his responsibility for any attorneys' fees, so he could not recover those fees under § 362(k)(1).[16]  The *Thompson* Court then noted that the debtor's attorneys could have prevented the result by "stating that the recovery of attorneys['] fees would be contingent on recovery from [the violator], but that it was necessary for the attorneys to maintain some actual individual liability on the part of [the debtor] to allow the fees to be recoverable as damages for purposes of . . . §362(k)(1)." [Doc. No. 11, p. 22].[17]

In addition to their reliance on *Thompson*, the Collier Appellants argue that the Bankruptcy Court misinterpreted the Fifth Circuit's decision in *Repine*.  They contend that *Repine* stands only for the propositions that it is "'proper to award attorney's fees that were incurred prosecuting a

---

[16]The debtor had paid attorneys' fees of $3,500 and originally was responsible for fees on appeal, but his attorneys waived his responsibility for fees on appeal for this dispute.  426 B.R. at 766.  Thus, the debtor had no responsibility for any fees, regardless of what happened on appeal.

[17]The *Thompson* Court stated that the attorneys should have entered "into a clear written agreement providing that the fees were to be due from [the debtor] but contingent upon success of the appeal and collection from [the violator].  By doing so, they could have eliminated [the debtor's] risk of payment while also ensuring that [the debtor] actually incurred damages in the form of attorneys' fees that were due from the client, albeit to be collected from the creditor." *Id.* at 767.

section 362(k) claim,'" and that "there is no precedent 'that requires a prevailing party to prove that fees actually have been paid [by the debtor] before they can be awarded [to him].'" [Doc. No. 11, p. 23 (quoting *Repine*, 536 F.3d at 522)].  However, they argue that *Repine* did not address the argument herein that a prevailing party is limited to recovering attorneys' fees for which she is actually responsible.  Finally, the Collier Appellants argue that the Bankruptcy Court's reading and application of *Repine* ignores the statutory language of § 362(k) which only allows a party to recover attorneys' fees as part of her "actual damages." [Doc. No. 11, p. 23].

Washington responds that *Repine* is substantially identical to this case.  The bankruptcy court in *Repine* awarded $27,280.00 in actual damages, $5,000.00 in punitive damages, and $33,720.00 in attorneys' fees for a violation of the automatic stay.  Washington notes further that the *Repine* Court cited *In re Still*, 117 B.R. 251 (Bankr. E.D. Tex. 1990), for the proposition that a "debtor could collect attorney's fees incurred in prosecuting a stay violation as long as there were actual damages." *Repine*, 536 F.3d at 522 (citing *Still*, 117 B.R. at 254).  Washington then cited to decisions in other jurisdictions which suggest that there is a circuit split on this issue, but that district courts in the Fifth Circuit, as well as the First Circuit Court of Appeals and district courts in other circuits, continue to follow *Repine* and award reasonable attorneys' fees.  Washington urges the Court to uphold the Bankruptcy Court's decision as a proper application of the "plain and dispositive language of . . .*Repine*." [Doc. No. 12, p. 12].  Finally, Washington dismisses the *Thompson* case as having "peculiar facts . . . [which] account for its peculiar result."[18] *Id.* at p. 12 n.2.

In their reply memorandum, the Collier Appellants deny a circuit split and characterize

---

[18]Washington also makes additional arguments to distinguish *Thompson*, but the Court finds it unnecessary to recount them here in light of its conclusion.

Washington's interpretation of *Repine* as "strained." [Doc. No. 13, p. ii].

Having fully reviewed the arguments and the case law, the Court finds that the Bankruptcy Court did not commit legal error in awarding reasonable attorneys' fees and costs to Washington, rather than limiting her to a recovery of 50% her actual damages.  Although the Court considers *Repine* to be persuasive, rather than precedential, since it did not address the exact issue here,[19] the Court also agrees with the Bankruptcy Court that *Repine* can be read to support the fees and costs awarded.  Washington was responsible for attorneys' fees if there was a recovery,[20] and there was a recovery of actual damages (as well as punitive damages) in this case.  Thus, the Court finds that the Bankruptcy Court properly awarded attorneys' fees at a reasonable rate and for the reasonable time expended.  To this extent, the Bankruptcy Court's April 7 and May 28, 2015 Opinions are AFFIRMED, and the Collier Appellants' Appeal is DENIED.

## III.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Opinions are AFFIRMED IN PART AND REVERSED IN PART, and the Collier Appellants' Appeal is GRANTED IN PART AND DENIED IN PART.  To the extent that the Collier Appellants appealed the Bankruptcy Court's imposition of a civil sanction, the Bankruptcy Court's April 7, 2015 Opinion is REVERSED, and the Collier Appellants' Appeal is GRANTED.  The Bankruptcy Court April 7 and May 28, 2015 Opinions are otherwise AFFIRMED, and the Collier Appellants' Appeal is DENIED.   This matter is

---

[19]It is unclear what type of agreement Repine had with his attorney for payment of fees. Given the fact that Repine had not actually paid any fees, he may well have had a contingency fee agreement, or, he may have had some type of agreement to pay attorneys' fees at the standard hourly rate if there was a recovery.  Those facts are just not part of the decision.

[20]Washington is, thus, distinguishable from the debtor in *Thompson* who had no responsibility for any attorneys' fees.

REMANDED to the Bankruptcy Court to the extent any further proceedings are necessary.

MONROE, LOUISIANA, this 31st day of March, 2016.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE